# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RONALD CARTER,**
          **Plaintiff,**

     v.                                                             Case No. 10-CV-00396

**OFFICER JOSEPH MERRILL, JOHN DOES 1–3,**
**TIMOTHY BEHNING, DETECTIVE JAMES TIMM,**
**and CITY OF MILWAUKEE,**
          **Defendants.**

---

## DECISION AND ORDER

Plaintiff Ronald Carter brings this § 1983 action against City of Milwaukee police officer Joseph Merrill and several other defendants. Plaintiff alleges that Merrill violated his rights under the Fourth Amendment by using excessive force against him and by making a false report which caused him to be arrested without probable cause. Plaintiff also alleges that police officers Timothy Behning and James Timm violated his right of access to the courts, guaranteed by the First and Fourteenth Amendments, by causing his car to be destroyed and thereby depriving him of evidence that he could have used in the present case. Defendants do not dispute that plaintiff's excessive force claim must go to trial but seek summary judgment on the latter two claims. Plaintiff agrees that the claims against the John Doe defendants must be dismissed and that the City is a defendant only because it is a possible indemnitor.

### I. BACKGROUND

Plaintiff states that during the evening of October 8, 2009, he was walking in an alley in Milwaukee and noticed several items, including a bucket and a drill, by a garbage can.

He thought that he could use these items thus he got his car and parked it in the alley in preparation for putting the items in it. In the course of this activity, he walked past a garage, the door of which was open. Plaintiff states that he did not enter the garage. Merrill owned the garage and had come outside apparently because the garage light was on. Before doing so, he had clipped his police badge to the waistband of his pajamas and picked up his gun and a flashlight. Plaintiff states that Merrill said "Stop, don't move," but that he did not see Merrill's badge or hear him identify himself as an officer. He observed Merrill's gun and flashlight. Plaintiff states that Merrill accused him of breaking into the garage and threatened to kill him. Plaintiff became frightened, ran to his car, jumped inside, closed the door and started the engine. Plaintiff states that Merrill chased him, reached through the open window on the driver's side, hit him in the face with his gun and fired some eight shots into the car as he drove away. At least one of the bullets hit plaintiff's right hand permanently damaging it.

Merrill contacted the Police Department and advised defendant Behning that he had observed plaintiff walk into his garage in an attempt to burglarize it. He said that he identified himself as an officer whereupon plaintiff went to his car. He said that he followed plaintiff and tried to stop him from starting the car by stepping between the car and the door on the driver's side. Merrill continued that plaintiff started the car and drove away forcing him to hold onto the car to keep from falling and being run over. He said that he had to fire at plaintiff to get him to stop the car and that he was dragged ninety feet before he could disengage himself. Merrill was able to record the license plate number of plaintiff's car.

2

The officers who investigated the case found no physical evidence that plaintiff had been in the garage. On October 9, 2009, based on Merrill's statements, they arrested plaintiff for burglary and recklessly endangering Merrill's safety. They found no property of Merrill's in plaintiff's possession. Officers Behning and Timm seized and photographed plaintiff's car and had trajectory rods placed in some of the bullet holes to determine the course of the bullets. Subsequently, Behning and Timm released the car to the City's tow lot. On October 10, 2009, the lot sent a letter to plaintiff's last known address stating that the car had to be retrieved within fifteen days or it would be destroyed. Plaintiff's niece received the letter and gave it to plaintiff's sister but plaintiff's family did not timely pick up the car. Thus, on October 29, the car was destroyed.

In the meantime, the District Attorney charged plaintiff with burglary as a repeater but declined to issue a recklessly endangering safety charge. Also, at the time of his confrontation with Merrill, plaintiff was on parole and on October 13, 2009, plaintiff's parole officer placed a parole hold on him. Merrill testified at plaintiff's preliminary hearing, and the court found probable cause that plaintiff had committed burglary. Prior to trial, plaintiff's counsel asked to inspect the car. On December 19, 2009, after learning that the car had been destroyed, the trial judge dismissed the charges against plaintiff concluding that the failure to preserve the car prevented plaintiff from examining relevant evidence and, thus, from obtaining a fair trial. Plaintiff, however, was not released from prison until January 5, 2010 because of the parole hold.

I will state additional facts in the course of the opinion.

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-movant, here plaintiff, and may grant the motion only if no reasonable juror could find for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). In order to prevail on their motion for summary judgment, defendants must show that no reasonable juror could conclude either that they acted under color of law or that they deprived plaintiff of a constitutional right.

Merrill first argues that plaintiff's claim that he caused plaintiff to be arrested without probable cause fails because he neither applied for an arrest warrant for plaintiff nor actually arrested him[1]. To cause plaintiff to be arrested without probable cause, however, it was not necessary for Merrill to participate directly in plaintiff's arrest. It is well established that "[i]n constitutional-tort cases . . . 'a man [is] responsible for the natural consequences of his actions.'" *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). "An official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000). Thus, a police officer who procures a warrant by making false representations to a judge can be held liable for the resulting

---

[1]Merrill does not dispute that when he confronted plaintiff in the alley and when he reported the incident to other officers, he was acting as a police officer and, therefore, under color of law.

4

arrest, even though the judge issued the warrant. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003); *see also Malley v. Briggs*, 475 U.S. 335, 345 (1986) (holding that the issuance of a warrant does not break "the causal chain between the application for the warrant and the improvident arrest"). Similarly, an officer who deliberately supplies false information to a prosecutor can be held liable for the resulting unlawful prosecution, even though the prosecutor is the one who took the case to trial. *Jones*, 856 F.2d at 994. Thus, if Merrill misrepresented what plaintiff did and his misrepresentation caused plaintiff to be arrested, Merrill can be held liable for plaintiff's unlawful arrest. The arrest need only be a direct and reasonably foreseeable consequence of Merrill's statement. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012) (noting that an act is the legal cause of an injury under § 1983 if it in fact caused the injury and the injury was a reasonably foreseeable consequence of the act).

In the present case, a reasonable juror could conclude that plaintiff's arrest resulted from Merrill's statement and was a reasonably foreseeable consequence of it. Merrill's statement provided probable cause for plaintiff's arrest. "Probable cause exists if an officer reasonably believes, in light of the facts known to [him or] her at the time, that a suspect had committed or was committing an offense." *U.S. v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). The only evidence that plaintiff committed a burglary was Merrill's statement that he saw plaintiff in his garage. The only evidence that plaintiff recklessly endangered Merrill's safety was Merrill's statement that plaintiff attempted to run him over. Merrill was a police officer who investigated a crime and reported the results to other officers. It was reasonably foreseeable that his fellow officers would rely on his statement and arrest

5

plaintiff. A reasonable juror could also find that Merrill's version of the events leading up to plaintiff's arrest was false and that, therefore, plaintiff was arrested without probable cause. Such a juror could reach this conclusion if he believed plaintiff's statement that he never entered Merrill's garage and never attempted to run Merrill over.[2]

Merrill claims that, even if he is responsible for plaintiff's initial arrest, the parole officer's decision to place a parole hold on plaintiff on October 13 was an intervening cause which shields him from liability for damages caused by plaintiff's detention after October 13. I disagree. Without Merrill's accusations, the parole officer would never have investigated plaintiff. Moreover, the parole officer testified that, when she recommended revocation of plaintiff's parole, she "primarily" relied on Merrill's statement that plaintiff had broken into a garage. (Aff. Lynn R. Laufenberg, Ex. 11, Tr. Parole Revocation Hearing at 32–34, ECF No. 50-6.) She also stated that she would "absolutely not" have recommended revoking his parole because he purchased a car without her permission, and that, while she would have discouraged dumpster diving, i.e. plaintiff's effort to obtain the bucket and the drill from the garbage, such activity was not a crime and would not have violated plaintiff's parole. (*Id.*) The parole hold was also withdrawn as soon as the burglary charge against plaintiff was dropped. Thus, a reasonable juror could conclude that the parole hold was a direct and foreseeable result of Merrill's statements regarding plaintiff's conduct.

Merrill also argues that he is entitled to qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their

---

[2]Merrill is immune from liability for damages under § 1983 for his testimony during the preliminary hearing. See *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506-07, 1510 (2012). However, he is not immune for misrepresentations made outside the courtroom. *Id.* at 1507 n. 1.

6

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). In order to determine whether defendant is entitled to qualified immunity, I ask "(1) whether the facts, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation." *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012). I have already found that, taken in plaintiff's favor, the facts amount to a constitutional violation.

To prove that a right was clearly established, plaintiff does not have to show that "the very act in question has previously been held unlawful," only that the unlawfulness of it was apparent "in light of pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* While there is no case from before October 2009 specifically holding that a police officer violates the Fourth Amendment when he or she gives a false, unsigned statement to another officer that results in an unlawful arrest, it was clearly established that plaintiff had a right to be free from arrest without probable cause, *Driebel v. City of* Milwaukee, 298 F.3d 622, 652 (7th Cir. 2002), and that Merrill could be held liable for civil damages under § 1983 for the natural consequences of his actions, *see Malley*, 475 U.S. at 345; *Jones*, 856 F.2d at 994, *see also Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself."). Thus,

7

it was clearly established at the time of plaintiff's arrest that it was unlawful for a police officer to cause an individual to be arrested by orally submitting a false police report.

Plaintiff's third claim is that Behning and Timm deprived him of access to the courts by intentionally destroying evidence which they knew he needed to effectively litigate his claims against Merrill. "The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). An officer can violate this right by destroying evidence that the officer knows is "essential proof" needed by a plaintiff to bring a claim in court. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999).

Based on the evidence presented, I conclude that no reasonable juror could find that Behning and Timm intentionally destroyed what they knew was essential proof of plaintiff's claims in the present case or that their actions caused the destruction of such proof. The evidence indicates that Behning and Timm kept the car in the garage of the Police Administration Building until they and others had completed examining it for evidence. At this point, they released the vehicle from "evidence" to "safekeeping" status which meant that it was delivered to the City's tow lot. The purpose of delivering a vehicle to the tow lot is to enable the vehicle's owner to retrieve it. Behning and Timm knew that when the vehicle was released to the tow lot, a tow lot employee would send a letter to the owner of the vehicle advising him that it was available for pick up. In the present case, when plaintiff's car reached the lot, the lot followed its standard procedure of mailing a letter to the owner's last known address. On October 10, 2009, the lot sent plaintiff a letter advising him that the car would be destroyed or sold if it wasn't picked up within 15 days.

8

Plaintiff's niece, with whom plaintiff had been living, received the letter and gave it to plaintiff's sister. Plaintiff's sister brought the letter to plaintiff's attention well before the fifteen day deadline. Plaintiff's sister states that she attempted to follow up but that someone at the tow lot told her she needed to work with the police department and that the department did not return her calls. Plaintiff's sister's statement, however, is extremely vague, and she does not suggest that Behning or Timm did anything to stop her from getting the car. She clearly failed to take the steps necessary to retrieve the car. In addition, plaintiff has access to any information uncovered by the police as the result of their examination of the car. Based on these facts, no reasonable juror could find that defendants Behning or Timm intentionally destroyed evidence essential to proving plaintiff's claim or that their actions caused the destruction of such evidence.

Although the state court trial judge determined that the police destroyed plaintiff's car in bad faith, the judge had not been apprised of all the relevant facts. The judge was told that the car was first sent to the tow lot on October 27, the same day that plaintiff's attorney demanded access to it, but the car was actually sent to the tow lot almost three weeks earlier, on October 9. The judge was also told that the car had been destroyed within 48 hours of arriving at the tow lot, when it was actually held for 20 days. Finally, the judge was not informed that plaintiff had received a letter informing him that the car had to be picked up or would be destroyed.

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment [DOCKET #47] is **DENIED** with respect to plaintiff's claims against Merrill and **GRANTED** with respect to his claims against Behning and Timm.

9

**IT IS FURTHER ORDERED** that the claims against defendants John Does 1–3 are **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 27th day of February 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge