**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**RONALD CARTER,**
           **Plaintiff,**

     **v.**                                                        **Case No. 10-CV-00396**

**OFFICER JOSEPH MERRILL**
           **Defendant.**

---

## DECISION AND ORDER

Plaintiff Ronald Carter brought this § 1983 excessive force case against defendant Joseph Merrill, a City of Milwaukee police officer, alleging that defendant violated his rights under the Fourth Amendment when he shot him in the hand. In January 2014, I conducted a trial which ended in a hung jury and, as a result, a mistrial. Based on a transcript of the trial, plaintiff now moves for partial summary judgment on the issue of liability.

Summary judgment is required if the evidence indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In order to grant plaintiff's motion, I must conclude that no reasonable jury could find that defendant was not liable for plaintiff's injuries. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Under Rule 56, I may grant a motion for summary judgment at any time even after trial as long as there are no issues of material fact, and a party is entitled to judgment as a matter of law. Ross v. Hotel Employees & Restaurant Employees Int'l Union, 266 F.3d 236, 243 (3d Cir. 2001); see also Petit v. City of Chicago, 352 F.3d 111 (7th Cir. 2003). In evaluating plaintiff's motion, I draw all

inferences in the light most favorable to defendant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff, a fifty-seven year old African-American male, testified that on the evening of October 8, 2009, he visited his brother who lives on the northwest side of Milwaukee. Sometime shortly after 10:00 p.m. he went for a walk and wound up in an alley on which defendant's garage fronts. Plaintiff saw some garbage in the alley and discovered in it several items that he thought he could use including a bucket and a grill. He set them out intending to retrieve them later and walked back to his car. He returned in a few minutes and parked his car in the alley, close to defendant's garage.

Defendant, a white police officer, testified that he was home and off duty. While preparing for bed, he noticed a light on and possibly a broken window in the garage. He clipped his badge to his pajama bottoms and, with his gun in one hand and a flashlight in the other, went to the garage to check things out. As he walked toward the garage, he noticed that the window was not broken. He observed a vehicle "pull up and stop" in the alley and he observed plaintiff, who he described as a large "black male, large very tall," exit the vehicle. Defendant's garage door was open, and defendant testified that after plaintiff exited his vehicle he walked into defendant's garage. Plaintiff denies entering defendant's garage, but for purposes of the present motion I assume that he did.

Defendant then went into the garage through the side door and identified himself as "Milwaukee Police" and told plaintiff to "stop." Defendant testified that plaintiff said "I didn't do anything, I didn't take anything" and turned around and exited. Defendant testified that he felt a heightened alertness because even if plaintiff hadn't taken anything, "he was walking away which kind of seemed like he was guilty of something." Plaintiff

2

walked quickly to his car, about twenty feet away, and got into it. Defendant followed plaintiff and ordered him out of the vehicle. As he followed plaintiff, defendant put his flashlight in his pocket. According to defendant, "it was a lot of heightened emotion, I mean, obviously I was suspecting criminal activity at my own residence. It wasn't like I was dispatched to an assignment."

Defendant testified that "while I'm . . . ordering him out of the vehicle . . . he puts his keys [in the ignition] . . . at that point I grab toward the keys . . . to prevent Mr. Carter . . . from fleeing." The door on the driver's side was open, and defendant testified that he stood in the opening grabbing for the keys with his left hand and placing his right hand in which he held his gun on the roof of plaintiff's car. In the meantime, plaintiff put the car in gear and started driving down the alley. Defendant testified that he feared for his life and decided that "he needed to stop this man because he was disregarding my commands to stop the vehicle." Defendant stated that he braced himself and "began firing my service weapon. It happened very quickly. My right hand came off of the top of the vehicle and the number of rounds that I was able to get off before I fell I have no idea ... He was accelerating down the alley which in my mind was posing a great threat to me." Somehow as "I was firing I became disengaged from the vehicle. I fell to the ground, I mean, I remember some more shots going off after that. . . . My interest was to stop the threat that was Mr. Carter." All in all, defendant fired nine shots, one of which struck plaintiff's hand causing permanent injury to it.

Plaintiff's expert witness testified that defendant's use of deadly force in the above-described situation was objectively unreasonable. Defendant's expert, Milwaukee police lieutenant Joseph Seitz, testified that defendant was found guilty of violating a department

3

rule against shooting at a moving vehicle but characterized this as a "technical violation." He said that officers are trained to be good witnesses and not to reach into vehicles but indicated that in an imperfect world such training could not always be followed.  In Seitz's opinion, plaintiff escalated the situation and forced defendant to act as he did.  Seitz testified that defendant did not have to follow plaintiff to his car and could have just written down his license plate.  He could also have disengaged with plaintiff which actually would have been the preferred option, but defendant did what police officers do, namely investigate what was occurring.  "As police officers, we always run towards the problem." Seitz stated that before defendant reached into plaintiff's vehicle none of plaintiff's actions were dangerous but that plaintiff's presence provoked the question of why plaintiff was there in the first place.   When asked whether that mattered, Seitz answered "it does if its my house."  Seitz then testified that police officers were not allowed to use deadly force for property offenses but that this escalated into a situation where defendant's life was in danger.

In order to prevail on a § 1983 claim, plaintiff must establish that defendant, while acting under color of state law, violated his constitutional rights.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In the present case, only the latter issue is in dispute.  The question is whether defendant violated plaintiff's right not to be subjected to excessive force by a police officer.  Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386 (1989). Reasonableness depends on the information known to the officer prior to and at the immediate time of the shooting.  *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (en banc). The reasonableness inquiry involves balancing the nature of the intrusion on plaintiff's

4

Fourth Amendment interests against the governmental interests alleged to justify the intrusion. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). An officer cannot use greater force than is reasonably necessary considering the totality of circumstances and may use deadly force only to seize a felon who has committed a violent crime and is fleeing or who presents an immediate danger to the officer or others. *Deering v. Reich*, 183 F.3d 645, 651 (7th Cir. 1999). An officer cannot unreasonably create a situation that ostensibly permits him to use deadly force. *Estate of Starks v. Enyart*, 5 F.3d 230, 238 (7th Cir. 1999).

In the present case, defendant had no reason to believe that plaintiff had committed a violent crime. At most, plaintiff had unlawfully entered defendant's garage. And the fact that defendant owned the garage gave defendant no more authority than if he was investigating a matter involving someone else's garage.

Defendant clearly behaved imprudently in several respects. He contributed to creating a problematic situation by reaching into plaintiff's car (in violation of departmental safety regulations) to try to grab the car keys or turn off the ignition. Instead, defendant could have disengaged and been a good witness by carefully observing plaintiff, plaintiff's vehicle and plaintiff's license plate. If defendant had done this and called for backup, plaintiff would more than likely have been arrested within a short time, and no one would have been hurt.

Defendant argues that his use of deadly force was reasonable because even though he contributed to creating the risky situation, he was in fear for his life. There are several problems with this argument. One is that defendant testified that the reason he fired his weapon was "to stop this man because he was disregarding my commands to stop the vehicle." This suggests that the reason that defendant used deadly force was to take

custody of plaintiff rather than to protect his own life. A second problem with defendant's argument is that it is difficult to see how firing his weapon at plaintiff, instead of just dropping away from the vehicle, as he ultimately did without being seriously injured, would have protected his life. Shooting the driver is unlikely to quickly bring a moving vehicle to a halt. A third problem is that defendant kept firing at plaintiff after he had dropped away from the vehicle and was on the ground out of any possible jeopardy.

Nevertheless, it is conceivable, although barely so, that a factfinder could conclude that defendant reasonably feared for his own safety and that, in the tense atmosphere that existed, reasonably believed that firing his weapon at plaintiff might cause the car to stop or slow down and thus alleviate the danger. Questions of excessive force are usually resolved by juries, and although plaintiff makes a very strong argument that the unusual circumstances of this case make it an exception, I cannot say that no reasonable jury could find for defendant and, therefore, I cannot grant plaintiff's motion. Another jury will have to resolve this matter.

Therefore, **IT IS ORDERED** that plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone conference for the purpose of scheduling a new trial will be held on **December 15, 2014 at 10:30 a.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin this 2nd day of December 2014.

                                                s/ Lynn Adelman
                                                _____
                                                LYNN ADELMAN
                                                District Judge